Charles C. Weller
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
legal@cweller.com
Tel: 858.414.7465
Fax: 858.300.5137

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

KASAMA BRAND, *individually and on*
*behalf of all those similarly situated*,

                    *Plaintiff*,

*v.*

ONLY WHAT YOU NEED, INC.,
*a Delaware corporation*,

                    *Defendant*.

No. '22CV1052 JO   DEB

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

1.     When consumers read "zero sugar," they think "low calorie." For millions of Americans who watch their weight, a statement that a food has "zero sugar" is tantamount to saying that it's a diet food that can help you meet your weight-loss goals.

2.     The federal Food and Drug Administration ("FDA") has recognized—and actually written into the Code of Federal Regulations—this common-sense insight. At 21 C.F.R. § 101.60(c), in a set of regulations governing sugar claims on food labels, the agency states that "Consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners *e.g.*, 'sugar free,' or 'no sugar,' as indicating a product which is low in calories or significantly reduced in calories." Thus, under federal law these statements can only

be made for foods that actually are low-calorie. Otherwise, the zero-sugar claim must be immediately accompanied by a disclaimer, to the effect that the food is "not for weight control" or "not a low calorie food." *Id.* at § 101.60(c)(iii). This requirement helps prevent consumer confusion and serves important health and dietary interests.

3. Capitalizing on the craze for low-carbohydrate foods and eating plans, Defendant Only What You Need ("OWYN") has sold millions of dollars' worth of plant-based protein drinks providing 35 grams of plant protein per serving under the name "Pro Elite High Protein Shakes" ("the Products"). These shakes state prominently on the front and back labels and on the Products' website that they have "0 g[rams] sugar" or "zero sugar"—a clear reflection of the importance that so many consumers place on buying foods that can help them reduce their sugar intake. They are also specifically advertised as assisting with weight loss.

4. But contrary to common-sense consumer expectations, these shakes are far from low-calorie foods. A single 12-ounce serving of these shakes contains about 230 calories—which is actually far more than the 140 calories found in the same-sized serving of a can of Coca-Cola. These shakes also have far more calories per 12-ounce serving than protein shakes provided by competitors such as Weight Watchers and Slim-Fast.

5. Because these Products do not meet the regulatory definition (or any consumer's expectation) of a low- or reduced-calorie food, federal regulations require Defendant to make a disclaimer that the Products are not for weight control, or the like. But the Products' labels do not contain the required disclaimer, which would provide material facts to give consumers the full picture about these Products' "0g sugar" and "zero sugar" claims.

6. The failure to include this disclaimer make OWYN's label and advertising claims false, deceptive, inaccurate, and/or misleading, and the labels (and Defendant's advertising on

its and other third-party websites) violate federal and state laws and regulations requiring accuracy in nutritional labels.

7.      Plaintiff Kasama Brand, and thousands of other consumers, purchased the Products in reliance on Defendant's marketing claims, and especially on the deceptive and misleading implication that these shakes were low-calorie foods. Defendant reaped millions of dollars in profits from these consumers, who received an inadequate product sold under false pretenses.

8.      Ms. Brand brings this class action Complaint on behalf of herself and a nationwide Class of consumers (as well as a subclass of California consumers) who purchased the Products. Under the laws of the states of New Jersey and California, Defendant has engaged in unfair and deceptive trade practices, sold goods under false pretenses, and defrauded its customers of the benefit of their bargain. This Court should certify a Class, find Defendant liable for consumer fraud, deceptive practices, and breach of warranties, and afford the Class and Ms. Brand equitable relief and compensatory, consequential, and punitive damages to the extent permitted by law.

**PARTIES**

9.      Plaintiff Kasama Brand is, and at all times relevant has been, a citizen of the state of California domiciled in San Diego, California, which is located in this district.

10.     Defendant Only What You Need, Inc. is a Delaware corporation with its principal place of business in Fairfield, New Jersey. That state is where Defendant maintains its headquarter offices and plans its product development, advertising, promotion, and marketing strategies.

**JURISDICTION AND VENUE**

11.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the

United States Code); specifically, under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

12.     Plaintiff is a citizen of a state different from the Defendant.

13.     The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

14.     In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

15.     In the alternative, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000 exclusive of interest, fees, and costs.

16.     This Court has personal jurisdiction over Defendant because this action arises out of and relates to OWYN's contacts with this forum.

17.     Those contacts include but are not limited to sales of the Products directly to commercial and individual consumers located in this district, including Plaintiff; shipping the Products to commercial and individual consumers in this district, including Plaintiff; knowingly directing advertising and marketing materials concerning the Products into this district through wires and mails, both directly and through electronic and print publications that are directed to commercial and individual consumers in this district; and operating an e-commerce web site that offers the Products for sale to commercial and individual consumers in this district, as well as offering the Products for sale through third-party e-commerce websites, through both of which commercial and individual consumers residing in this district have purchased the Products.

18.     Defendant OWYN's knowingly directs electronic activity and ships the Products into this district with the intent to engage in business interactions for profit, and it has in fact engaged in such interactions, including the sale of the Products to Plaintiff.

19.     Defendant OWYN also sells the Products to retailers and wholesalers in this district for the purpose of making the Products available for purchase by individual consumers in this district.

20.     Plaintiff's losses and those of other Class members were sustained in this district.

21.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

22.     Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over defendant.

## FACTUAL ALLEGATIONS

23.     Millions of Americans—practitioners of eating plans such as "Atkins," "keto," "Whole30," "South Beach," or "paleo"—purchase foods that are low in carbohydrates and sugars. For others, these purchases are not part of a specific diet plan, but simply an effort to eat fewer refined carbohydrates and less sugar. Consumers use these products to supplement their diet, replace high-carb foods, reduce appetite, lose weight, and gain muscle.

24.     The publication *Food Insight* reports that roughly a quarter of Americans who follow an eating plan use some variant of the low-carb, low-sugar, high-protein approach. *See* https://foodinsight.org/one-third-of-americans-are-dieting-including-one-in-10-who-fast-while-consumers-also-hunger-for-organic-natural-and-sustainable/.

25.     Globally, the market for ketogenic products alone is expected to grow from $10.3 billion in 2018 to $17.8 billion by 2026 at a compound annual growth rate of 7.1 percent during the     forecast     period     from     2019     to     2026.     *See*

https://www.globenewswire.com/newsrelease/2020/02/27/1991616/0/en/Global-Keto-Diet-Market-Is-Expected-to-Reach-USD-17-8-Billion-by-2026-Fior-Markets.html.

26.    Meanwhile, almost three-quarters of American report they are trying to reduce their sugar intake—with about 30 percent reporting they are doing so by switching to reduced-sugar food products. *See* https://www.foodbusinessnews.net/articles/16324-fewer-americans-seek-to-limit-sugar-ific-survey-says.

**A.    Sugar Claims and Federal Regulation.**

27.    In 1993, the Food and Drug Administration promulgated final rules governing nutrient claims on food labels, pursuant to authority provided to it under Section 201(n) of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 321(n), as well as Sections 403(a), 403(r), and 701(a) of the Act. The goal of these regulations was, *inter alia*, to "prohibit labeling that [is] false or misleading in that it fails to reveal facts that are material in light of the representations that are made" with respect to the food. Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms, 58 Fed. Reg. 2302, 2303 (1993).

28.    As part of these regulations, FDA determined that food manufacturers could not use terms "such as 'sugar free,' 'free of sugar,' 'no sugar,' 'zero sugar,' 'without sugar,' 'sugarless,' 'trivial source of sugar,' 'negligible source of sugar,' or 'dietarily insignificant source of sugar'" unless (1) the food met the regulatory definition of a low- or reduced-calorie food, or (2) the term "is immediately accompanied, each time it is used, by either the statement 'not a reduced calorie food,' 'not a low calorie food,' or 'not for weight control.'" 21 C.F.R. § 101.60(c) and (c)(iii)(B).

29.    Unusually, the agency explained its reasoning for this requirement directly in the Code of Federal Regulations: "Consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners *e.g*., 'sugar free,' or 'no sugar,' as

indicating a product which is low in calories or significantly reduced in calories." *Id*. § 101.60(c). Accordingly, the disclaimer was required in order meet the regulatory goal of prohibiting labels that are misleading because they "fail[] to reveal facts that are material in light of the representations that are made." 58 Fed. Reg. at 2303.

30.     Claims that a food was "low" in some potentially harmful nutrient such as sugar, fat, or sodium were of especial interest to FDA, because "low" or "zero" claims "may promote increased consumption of such foods and thus, result in dietary practices even more inconsistent with dietary guidelines" if the claim was misleading because it lacked contextualizing disclaimers. *Id*. at 2316.

31.     The sugar claims that trigger the disclaimer requirement of 21 C.F.R. § 101.60(c)(iii)(B) include not simply the terms stated in the regulation, but terms that are their functional equivalent, in the way that the claim "0 sugar" is the functional equivalent of the claim "zero sugar." *Cf. Hawkins v. Kroger Co.*, 906 F.3d 763, 771 (9th Cir. 2018) (in food labelling case, "no rational difference between 'zero' and '0.' Spelling out the number does not change its meaning").

32.     A "0g sugar" claim is the functional equivalent of a "zero sugar" claim.

**B.     OWYN's Sugar Claims.**

33.     Defendant Only What You Need, Inc. was formed in 2016 by Jeff Mroz and Kathryn Moos, a husband and wife who are former professional athletes.

34.     OWYN is one of the fastest-growing companies in its fast-growing market segment. In 2020, OWYN raised more than $7.5 million in a round of debt financing to expand its footprint. The brand has also been acquired by Purchase Capital, a hedge fund managed by veteran investor Nicholas Singer, who serves as OWYN's chairman. Purchase Capital makes long-term investments in brands with significant potential to become dominant market leaders.

35.  The Products are sold in three flavors—chocolate, vanilla, and "no-nut buttercup"—and are all low in carbs, allergen-free, and gluten-free. All of the Products are sold for the same price and use the same base formulation, varying only in terms of flavoring agents. They also make the same misleading zero sugar and 0g sugar claims. Each flavor of the Products is therefore substantially similar to all other flavors of the Products.

36.  OWYN's high-protein shakes are currently sold directly to consumers in some of the largest retail chains in the country, including Whole Foods, Wal-Mart, and Target, and also through online retailers such as Amazon.

37.  Both "0g sugar" and "zero sugar" claims are displayed prominently on the Products' front and back labelling, as shown below in these exemplar screenshots:



38.  OWYN's own website page also makes prominent claims that these Products have "zero sugar" such as this exemplar at https://liveowyn.com/products/pro-elite-protein-shakes/?sku=8812 (accessed July 19, 2022):

# Pro Elite High Protein Shakes



| Up to 35g of Protein | Zero Sugar | Keto |

⭐⭐⭐⭐⭐  446 reviews

Packed with up to 35g of complete plant protein. Zero sugar & net carbs. Build lean muscle and optimize performance with these low carb, keto protein shakes.

Features & Benefits

39.    OWYN's Amazon.com page makes a similar zero sugar claim, as shown in this exemplar    at    https://www.amazon.com/stores/OWYNOnlyWhatYouNeed/ProEliteShakes/page/A55917F4-26EA-4057-8AA9-B04CB4299092 (last accessed July 19, 2022):



### 35g High Quality Protein
100% Plant-Based & Vegan. 3 unique plant sources to build a complete protein profile with all 9 essential amino acids.

### Zero Sugar / Zero Net Carbs
Supports ketogenic and low carb diets.

### 535mg Vegan Omega-3
OWYN provides almost 1/2 of your daily Omega 3

40.    These Products are not low- or reduced-calorie foods.

41.    However, nowhere on the Products' labels or on its website or Amazon.com page does OWYN state that the shakes are not low- or reduced-calorie foods, nor do they make any of the disclaimers required by 21 C.F.R. § 101.60(c).

42.    These Products are sold at a premium to other products on the market that are similar.

43.    Plaintiff reserves the right to amend this Complaint to add additional OWYN products that make similar misleading and/or deceptive label claims.

44.    Other products that compete with the Products in the general category of low-carb, high-protein dietary supplements—including, for example, many items sold under the "Atkins" brand name—use the required disclaimer when making zero-sugar or 0 grams sugar claims.

**C.    Ms. Brand Purchases the Products.**

45.    Like millions of Americans, Ms. Brand tries to eat foods that are low in sugar. She is also concerned about caloric intake and prefers low- or reduced-calorie foods.

46.    On or about September 11, 2021, Ms. Brand purchased the chocolate and vanilla flavors of OWYN's high-protein shakes from a Sprouts market in San Diego, California.

47.    Prior to purchase, Ms. Brand carefully read the labels on the Products, including the prominent "0g sugar" and "zero sugar" claims made by the Defendant. She also reviewed the retailer's Amazon.com page, which makes a prominent "zero sugar" claim.

48.    Given the Defendant's label and website claims, Ms. Brand understood Defendant's 0 grams sugar and zero sugar claims to mean that these were low- or reduced-calorie foods. She relied on Defendant's statements such that she would not have purchased the Products from Defendant if the truth were known, or would have only been willing to pay a substantially reduced price for the Products had she known that Defendant's representations were deceptive and misleading.

**CLASS ACTION ALLEGATIONS**

49.    Plaintiff brings this action individually and as representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of a **National Class**: All persons within the United States who purchased the Defendant's Products within four years prior to the filing of this Complaint. Plaintiff also brings a this action on behalf of a California Subclass: All persons within the state of California who purchased the Defendant's Products within four years prior to the filing of this Complaint.

50.    Excluded from the Classes are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

51.    Plaintiff reserves the right to alter the Class definitions as necessary at any time to the full extent permitted by applicable law.

52.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

53.    **Numerosity – Rule 23(a)(1)**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiff believes and avers there are thousands of Class members geographically dispersed throughout the nation.

54.    **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

a)   Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are misleading and deceptive;

b)   Whether Defendant's actions violate the state consumer fraud statutes invoked below;

c)   Whether a reasonable consumer would understand Defendant's 0 grams sugar and zero sugar claims to imply that the Products were low- or reduced-calorie foods;

d)   the proper amount of damages and disgorgement or restitution;

e)   the proper scope of injunctive relief; and

f)   the proper amount of attorneys' fees.

55.   Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

56.   In short, these common questions of fact and law predominate over questions that affect only individual Class members.

57.   **Typicality – Rule 23(a)(3)**: Plaintiff's claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

58.   Specifically, all Class members, including Plaintiff, were harmed in the same way due to OWYN's uniform misconduct described herein; all Class members suffered similar economic injury due to OWYN's misrepresentations; and Plaintiff seeks the same relief as the Class members.

59.     There are no defenses available to OWYN that are unique to the named Plaintiff.

60.     **Adequacy of Representation – Rule 23(a)(4)**: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against OWYN.

61.     Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

62.     **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

a)      the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address OWYN's conduct such that it would be virtually impossible for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

b)      the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single Court;

c)      the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

d)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests of other Class members or would substantively impair or impede their ability to protect their interests.

63.    Unless the Class is certified, OWYN will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

64.    Unless a class-wide injunction is issued, OWYN will likely continue to, or allow its resellers to, advertise, market, promote, and sell the Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law.

65.    **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from OWYN's records and/or its agent's records of retail and online sales, as well as through public notice.

66.    OWYN has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

**COUNT 1**
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT,**
**N.J.S. § 56:8-1 *et seq*.**
**Nationwide Class**

67.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

68.    The Products constitute "merchandise" within the meaning of the Consumer Fraud Act. *See* N.J.S. § 56:8-1(c).

69.    Defendant engaged in deceptive conduct, as described herein, including affirmative misrepresentations, knowing omissions, and regulatory violations. *See* N.J.S. § 56:8-2.

70. Defendant intended that consumers including Plaintiff and the Class members should rely on its material omissions, as set forth herein, and Plaintiff and the Class members did in fact rely to their detriment.

71. Defendant's unlawful conduct was the actual and proximate cause of an ascertainable loss by Plaintiff and the Class members.

72. Plaintiff and the Class members are entitled to a refund of monies lost as a result of Defendant's unlawful conduct as set forth herein, as well as actual, consequential, and punitive damages; reasonable costs of suit and attorneys' fees; and other relief as permitted by law.

**COUNT 2**
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT,**
**CAL. CIV. CODE § 1750 *et seq.***
**California Subclass**

73. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

74. Plaintiff and all Class members are "consumers" within the meaning of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

75. The sale of the Products to Plaintiff and Class members was a "transaction" within the meaning of the CLRA, Cal. Civ. Code § 1761(e).

76. The Products purchased by Plaintiff and Class members is a "good" within the meaning of the CLRA, Cal. Civ. Code § 1761(a).

77. As alleged herein, OWYN's business practices are a violation of the CLRA because, knowing that consumers associate 0 grams sugar and zero sugar foods with low- or reduced-calorie foods, Defendant deceptively failed to reveal facts that are material in light of the 0 grams sugar and zero sugar representations that were made.

78.    Defendant's ongoing failure to provide material facts about the Products on the Products' label and associated advertising material violates the following subsections of Cal. Civ. Code § 1770(a) in these respects:

a)    Defendant's acts and practices constitute misrepresentations that the Products have characteristics, benefits, or uses which they do not have;

b)    Defendant misrepresented that the Products are of a particular standard, quality, and/or grade, when they are of another;

c)    Defendant's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised;

d)    Defendant's acts and practices fail to represent that transactions involving the Products involve actions that are prohibited by law, particularly the use of misleading nutritional labelling; and

e)    Defendant's acts and practices constitute representations that the Products have been supplied in accordance with previous representations when they were not.

79.    By reason of the foregoing, Plaintiff and the Class have been irreparably harmed, entitling them to injunctive relief, disgorgement, and restitution.

80.    Pursuant to Cal. Civ. Code § 1782, Plaintiff notified Defendant in writing of the particular violations of the CLRA described herein and demanded Defendant rectify the actions described above by providing complete monetary relief, agreeing to be bound by their legal obligations and to give notice to all affected customers of their intent to do so.  Plaintiff sent this notice by certified mail, return receipt requested, to Defendant's registered agent, at least 30 days before the filing of this Complaint.

81.    Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiff and the Class are entitled to recover actual damages sustained as a result of OWYN's violations of the CLRA.  Such

1    damages include, without limitation, monetary losses and actual, punitive, and consequential

2    damages, in an amount to be proven at trial.

3        82.    Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiff is entitled to enjoin

4    publication of misleading and deceptive nutritional labels for the Product and to recover her

5    reasonable attorneys' fees and costs.

6

7                                    **COUNT 3**
     **VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE**
8            **SECTION 17200 *et seq*. — "UNFAIR" CONDUCT**
                        **California Subclass**
9

10       83.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the

11   extent necessary, pleads this cause of action in the alternative.

12       84.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact

13   and has lost money or property as a result of OWYN's actions as set forth above.

14       85.    Class members have suffered injury in fact and have lost money or property as a

15   result of OWYN's actions as set forth above.

16       86.    OWYN's actions as alleged in this Complaint constitute "unfair" conduct within

17   the meaning of California Business and Professions Code Section 17200, *et seq*.

18       87.    OWYN's business practices, as alleged herein, are "unfair" because Defendant

19   deceptively failed to reveal facts that are material in light of the zero sugar and 0 grams sugar

20   representations that were made.

21       88.    As a result of this "unfair" conduct, Plaintiff and members of the Class expended

22   money they would not otherwise have spent and received a lower quality product that did not

23   provide the benefit they were assured it would provide.

24       89.    Defendant's wrongful business practices alleged herein constituted, and continue

25   to constitute, a continuing course of unfair competition since it continues to market and sell its

26

27

28

products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers

90.    Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class seek an order of this court enjoining OWYN from continuing to engage in "unfair" business practices and any other act prohibited by law, including those acts set forth in this Complaint.

91.    Plaintiff and the Class also seek an order requiring Defendant to make full restitution of all monies it has wrongfully obtained from Plaintiff and the class, along with all other relief allowable under Business and Professions Code Section 17200, *et seq.*

## COUNT 4
### VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 *et seq*. — "FRAUDULENT" CONDUCT
### California Subclass

92.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

93.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth above.

94.    Class members have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth above.

95.    Defendant's actions as alleged in this Complaint constitute "fraudulent" conduct within the meaning of California Business and Professions Code Section 17200 *et seq*.

96.    Defendant's business practices, as alleged herein, are "fraudulent" because it deceptively failed to reveal facts that are material in light of the zero sugar and 0 grams sugar representations that were made.

97.    As a result of this "fraudulent" conduct, Plaintiff and members of the Class expended money they would not otherwise have spent, and received a lower quality product that did not provide the benefit they were assured it would provide.

98.     Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers

99.     Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage in "fraudulent" business practices and any other act prohibited by law, including those acts set forth in this Complaint.

100.    Plaintiff and the Class also seek an order requiring Defendant to make full restitution of all monies it has wrongfully obtained from Plaintiffs and the Class, along with all other relief allowable under Business and Professions Code Section 17200, *et seq*.

### COUNT 5
### VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE
### SECTION 17200 *et seq*. — "UNLAWFUL" CONDUCT
### California Subclass

101.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

102.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth above.

103.    Class members have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth above.

104.    Defendant's actions as alleged in this Complaint constitute "unlawful" conduct within the meaning of California Business and Professions Code Section 17200, *et seq*.

105.    Defendant's business practices, as alleged herein, are "unlawful" because it deceptively failed to reveal facts that are material in light of the zero sugar and 0 grams sugar

representations that were made, in contravention of binding legal requirements governing the accuracy of nutritional labelling.

106.   As a result of this "unlawful" conduct, Plaintiff and members of the Class expended money they would not otherwise have spent, and received a lower quality product that did not provide the benefit they were assured it would provide.

107.   Defendant's business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

108.   Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class seek an order of this court enjoining Defendant from continuing to engage in "unlawful" business practices and any other act prohibited by law, including those acts set forth in this Complaint.

109.   Plaintiff and the Class also seek an order requiring Defendant to make full restitution of all moneys it has wrongfully obtained from plaintiffs and the class, along with all other relief allowable under Business and Professions Code Section 17200, *et seq*.

**COUNT 6**
**VIOLATION OF CALIFORNIA BUSINESS &**
**PROFESSIONS CODE SECTION 17500 *et seq*.**
**California Subclass**

110.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

111.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact and has lost money or property as a result of Defendant's actions as set forth above.

112.   Class members have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth above.

113.   Defendant engaged in advertising and marketing to the public and offered for sale advertising services on a nationwide basis, including in California.

114.    Defendant engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the sale of the Products to customers like Plaintiff.

115.   Defendant's advertisements and marketing representations regarding the characteristics of the Products were misleading and deceptive as set forth above.

116.   At the time it made and disseminated the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of Business and Professions Code Section 17500, *et seq.*

117.   Plaintiff seeks restitution, injunctive relief, and all other relief allowable under Business and Professions Code Section 17500, *et seq.*

## PRAYER FOR RELIEF

118.   WHEREFORE, Plaintiff respectfully requests the Court grant the following relief against Defendant:

a)   that this action be certified as a class action; that Plaintiff be appointed as class representative for the Class; and that the undersigned be appointed as class counsel for the Class;

b)   that the Court enter an order requiring Defendant to bear the costs of notification to Class members;

c)   that the Court enter a declaration or declaratory judgment that Defendant's acts and practices have violated and continue to violate various statutes cited herein;

d)   that the Court enter an order enjoining Defendant to refrain from the acts and practices described herein;

e)      that the Court enter an order requiring imposition of a constructive trust and and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and all members of the Class to restore to the Plaintiff and members of the Class all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice, in violation of laws, statutes or regulations, or one constituting unfair competition;

f)      that the Court distribute monies via fluid recovery or *cy pres* where necessary to prevent Defendant from retaining the benefits of its wrongful conduct;

g)      actual damages including but not limited to compensatory, incidental, consequential, statutory, treble, and punitive damages amounts the Court or jury will determine, in accordance with applicable law;

f)      attorney's fees and court costs, including all recoverable interest;

g)      any other legal or equitable relief to which Plaintiff or the Class members may be entitled.

TRIAL BY JURY IS DEMANDED.

Respectfully submitted,

/s/ *Charles C. Weller*
Charles C. Weller (SBN: 207034)
Attorney for Plaintiff

CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

July 19, 2022